Good morning, Your Honors. May it please the Court, Klaus-Peter Muthig on behalf of the defendants and appellants in this case, Joshua Ray, Joseph Sousa, Richard Gagnon, and Michael Danner. Muthig. This is a case regarding a purported warrantless search where the deputies at issue, who are the appellants, were given consent to enter the property. Plaintiffs now claim that that consent was coerced. The deputies filed a motion for summary judgment, arguing qualified immunity, and the district court denied that, founding that there was the issue of voluntary consent was better left for the trier of fact. The court also noted that the issues of fact underlying the qualified immunity analysis prevented granting summary judgment at the time, although that was the only thing that the district court said about the qualified immunity analysis. Now, as I understand it, this Court had some questions about jurisdiction as well as the substantive merits of the case, so I'll begin there. Relying principally, we relied on several cases, but at this point, Kennedy v. Ridgefield and Community House v. Boise, where the Court in Kennedy stated that jurisdiction would be proper in an interlocutory appeal in a qualified immunity action, where the question was whether the defendants violated clearly established law, given the undisputed facts, and that even after resolving the issues of fact in favor of the plaintiffs, they will not have made a showing that the defendants violated the clearly established constitutional right. That is what we are saying here, Your Honors. The deputies formed a belief, and it was an objectively reasonable belief at the time that they were allowed entrance into the house, that the consent was voluntary. It's that issue that we're focusing on. The fact that in Kennedy, they did the full analysis of whether there was a constitutional violation, the full saucier analysis, whether there was a constitutional violation, and then whether it violated clearly established law. Here, the most persuasive argument we have is whether it violated the clearly established law. Nevertheless, we did the full analysis for the Court. Now, the next issue that's relevant here is in Community House, which is very similar in this case, where the district court there did not even do the full saucier analysis, where they would have done an analysis on the second prong regarding clearly established. And there, the Court said that simply because they didn't do that enough. Kennedy, help me out, would you please? You told me that the district court denied the motion for summary judgment on qualified immunity by your client. Based on their existing, a material issue of fact as to whether qualified immunity applied, what was the issue of fact identified by the district court? There wasn't one, Your Honor. That's the point. The material issue of fact that the Court found was whether consent by the Loudermills was voluntary. I see. So the issue of fact was, was the consent voluntary? That's correct. Which is not strictly a question of fact. I'm sorry, Your Honor? Is that strictly a question of fact, or is it also a mixed question as to? Because I guess what I'm thinking about is, excuse me, the alleged lack of consent arises from a threat to take the children away. Correct. And as I understand it, there's no other alleged ground for lack of voluntary consent. Well, I don't want to argue the other side's case, but they're also saying that because the police presence was there, there was other factors that coerced them or made them think that they didn't have a choice. Okay. In any event, your point is that even if the consent was procured by the threat of taking the children away, there was no clearly established rule that that threat vitiated consent. That's exactly the point, Your Honor, and particularly with respect to an objectively reasonable belief of a deputy in the situation that they faced that day. And given all the other factors that were going on at the time, which is, and I will go right into the substantive portion of why that's true, at the time, as Your Honors know, the Loudermilks were on the phone with their attorney for, I believe, almost the entire time that this situation was progressing. And at the very end of this encounter, when they finally did allow them to come into the home, the deputies to come into the home, along with child protective services workers, they had just – actually, Deputy Ray had just been on the phone with the attorney. They clarified – pardon? Deputy Reagan had been on the phone with who? I'm sorry. I'm sorry, Your Honor. With the attorney for the Loudermilks, who had been on the phone with them throughout the entire situation as it progressed and developed, and that attorney spoke with the jury.  The judge was in the wrong and coerced the attorney, and it really had to be something as considerable as probable cause for a search and various things, and confirm it. The deputies to go. That goes to the merits of whether the consent was voluntary or not. Having been threatened with loss of the children on the one hand, they'd say, consent was compelled or coerced. But you would say, but after that, you talk with your attorney, we talk with your attorney, and the attorney said, go ahead. So the consent, at least represented by the attorney, who was your representative, was not coerced. But that goes to the merits of the issue. It doesn't go to whether there's a clearly established rule one way or the other. Well, no, and again, that, I guess it keeps coming back to the point, I guess, if there isn't a clearly established rule, then the officers were left to what, you know, their best judgment under the circumstances. And that's all we're saying here, that there were so many circumstances that indicated very strongly that the consent at the end of the day was voluntary. They had no reason to believe at that point, having spoken, the loudermost having spoken with their attorney and so forth, that when they finally let them in, that matter of fact, the final conversation, again, as I was trying to explain a bit earlier, is that Deputy Ray was on the phone with the Loudermilk's counsel, handed the phone back to Mr. Loudermilk, and within a matter of moments, they were allowed access. And, you know, I've read that portion of the testimony over and over again. And my conclusion is always that what would a reasonable person have believed, having done that, and the reasonable person would have believed that they were voluntarily consenting to the search of the home. Now, the Loudermilks have said, well, in situations where a party has a chance to consult with their counsel and they then consent, that we are trying to argue that as a matter of law, that means that the consent was voluntary. And we're not trying to argue that at all. We're arguing that under the circumstances of the situation that the deputies faced, that's a very strong indicator that they had the advice of counsel and that they consented after having had the opportunity to speak with counsel. Does that mean that it's always, that it always means that it's a voluntary consent? No, not always. But, again, we're getting to what the deputies reasonably would have believed, what a deputy in their shoes would have reasonably believed. And to say that no deputy would ever reasonably believe that this consent was not voluntary is just very difficult to fathom. And, Your Honors, I think I will reserve the remainder of my time. You may do so, counsel. We'll hear from Mr. Ferris. May I please the Court? My name is Michael Ferris. I'm representing the Loudermilk family. I'd like to begin with the attorney on the phone. I was not. Okay. It's one of our younger lawyers, Your Honor. T.J. Schmidt was his name. What the lawyer said, and this is in the record, what the lawyer said is they don't have the right to come into your house, but if you don't let them come into your house, they're going to take your kids. They're serious. I've explained to them that they're violating your civil rights. But they are going to come into your – they are going to take your kids away. In the reply brief for the deputies, they contend that the threat to take the kids away was a lawful threat. It's clearly, in settled law, that it is not a lawful threat. How do you distinguish this case from Iglesias from this Court? Your Honor, I am blanking on Iglesias. That is a somewhat earlier case in which the question was whether there was consent to search of a home, and there was a claim of coercion for several reasons, including that the person was vulnerable and was confronted with the potential separation from her small child present during the interrogation. And that factor, along with all the others, was held not to be enough to vitiate the consent. Your Honor, the – I am unprepared to address that particular case, except to the case that talks about the totality of circumstances. This Court's recent decision in Suriana, the Ninth Circuit decision in 2004, along with the Tingle case in 1981, along with the Supreme Court of the United States decision in Lyman v. Illinois of 1963, all three of those cases clearly say that the threat to remove a child makes consent to a search involuntary. And it's – Well, if there are cases pointing both ways, how can it be clearly established? Well, if the case has been overruled, I don't – I just apologize for not knowing the case. Well, let's assume for the sake of the question that it's an older case, but that it's never been overruled, and that it points in a different direction than Suriano and some of the more recent cases. Well, it's contrary to a decision of the United States Supreme Court, and so they couldn't rely on it. The United States Supreme Court said to the contrary in Lyman. And so the – an older case of that magnitude, to my knowledge, they don't rely on it. And that's really not the basis of their argument. Their argument, if you read their briefs, is we thought that the statute in question, the Arizona statute, looking for the citation here, 8-821B, allowed the social workers to come into the house, even though the statute on its face says you must have probable cause to believe that there was executive circumstances. Probable cause is a statutory element. If it didn't have that as a statutory element, it would be unconstitutional. This case is fully on all fours with Calabretta. I don't understand how counsel can represent Calabretta as being a nonconsensual search and this being a consensual search, because they're exactly the same. We faced exactly the same issue in Calabretta. On page 811 of Calabretta and page 812 of Calabretta, this Court recognized that the district court said there is a dispute on the facts about whether the officer's threat was the basis of granting the consent. And the only difference in that case, counsel for the police officers and social workers recognized that for the purposes of an appeal of a qualified immunity motion, they had to concede that the facts as the plaintiff's representative were correct. And in Calabretta, there was this exact dispute on whether or not it was remanded for trial on the issue of the voluntariness of the consent. That's in pages 811 and 812. It's even more clear in the unreported district court opinion, which this Court would have access to. I could get it for the Court as well since I was counsel in Calabretta, but I can't imagine that being the representative of this Court about Calabretta. Calabretta had exactly the same issue. And every legal proposition by the most recent decisions of this Court and by the Supreme Court of the United States, every aspect of it is clearly established. Child investigations for welfare of children are controlled by the Fourth Amendment. Calabretta makes that clear. White v. White made that clear even before that. The government has the burden of proof of voluntariness. Schneckcloth v. Vistamati and Crow v. County of San Diego, Tenth Circuit or Ninth Circuit from 2010. Anonymous tips alone cannot supply probable cause. That's Calabretta. The idea that they could come into this house on the basis of this Arizona statute defies both the terms of the statute and the decision of Calabretta. You have to have exigent circumstances and probable cause. Exigent circumstances do not exist when there is a two-month and a couple-a-day delay between the January 7th that they got the call at almost 1 o'clock in the morning, 1256 a.m., and they searched on March 5th. Sixty-plus days of delay. Calabretta talks about a 14-day delay in executing a search. You cannot claim exigent circumstances. The whole purpose of the exigent circumstances doctrine is there's no time to go get a warrant. Well, in 60 days, there's time to go get a warrant. If there's too – if you have – and they admit they don't have probable cause. The argument in the reply brief is we don't have to have probable cause. Because we have concern about children, we can come in. That's not what the statute says. That's not what Calabretta says. That's not what White by White says. There is nothing in the law anywhere that says you can come in on a child abuse investigation. But that's what was going on in this case, both in the court. But, of course, any entry can be made with consent, which takes us back around to that question. Free and voluntary consent. You tell a parent, if you don't let me in your house, I'm going to take your kids. There is no parent on the face of the earth where they feel like they've got free – they're giving free and voluntary consent at that moment in time. You say, I'm going to take your kids. You've got – you've got a whole truckload of police officers there, including some posse members, whatever that is. Does it make any difference, counsel, whether the threat to take the kids is based on valid legal authority? No. No. Not if the issue is voluntariness. Well, part of what the Supreme Court seemed to be saying in Lyman – Lynham was that the threats in that case were not connected to the thing they were trying to find out. It was a tactic, but it wasn't – there was no authority for it. What authority do they have to take these kids? There's no authority to take these children. The statute doesn't provide for the authority. The statute requires probable cause. Probable cause requires something more than an anonymous tip. This Court said so in Calabretta. They only had an anonymous tip. They have nothing besides an anonymous tip. What if they were advised by the child protective officer that under the Arizona statute, they had the authority to do so, and they told that to Loudermilk's counsel. They discussed it with him, and he disagreed. That's right, because he knew Calabretta, and he talked to them about Calabretta. But doesn't – under the recent Al Kid case, aren't reasonable mistakes a basis for qualified immunity? Reasonable mistakes of fact, but not reasonable mistakes of law. You mean the sheriff's deputies cannot rely on representation of what the law is by the child protective officer? No, they cannot, because they had the statute. They were looking at the statute themselves. They had the sergeant on the field, and they concluded, the sergeant on the ground concluded they did not have the statutory authority to enter. Because they've conceded at all levels. There's no probable cause. This court in Bilbray v. Brown, 1984 decision, when we're talking about the issue of reasonable belief, said, the existence of a reasonable belief that a search is lawful, viewed in the light of the settled nature of law, is a question for the trier of fact. Now, that is – I don't know how you can get more clear than that. An appeal on qualified immunity has to be on legal grounds. They've only identified an issue that this court has said is for the trier of fact in Bilbray v. Brown. And so how we can bootstrap a factual determination into a qualified immunity issue that's subject to an interlocutory appeal, frankly, escapes me as to how that's possible. The – every component of this case, the threat to take the family, we have to believe the – well, actually, this is not even contested by the parties. Everybody agrees that at the time they consented, the threat was on the table, we're going to take your kids if you don't let us in the house. That was on the table. Now, they had threatened to arrest, and they backed off that. They threatened other things, and they backed off other things. But everybody agrees, everyone agrees the threat to take the children was on the table. And, by the way, to say that the district court didn't perform the – Kennedy, you have the authority for the idea that a mistake, a reasonable mistake of a police officer as to the state of the law is not cognizable in qualified immunity, only a mistake as to a matter of fact? Well, I'm referring to the reasonable belief, Doctor. I'm thinking about Al Kidd, and there was a – the United States Supreme Court unanimously reversed this on qualified immunity, and the claim on qualified immunity never involved any mistake of fact. It involved a mistake of law. Your Honor, maybe I misspoke, but here's what my view is on it. So I'll just cross out that statement. Okay. That's fine. I will try again. On the question of mistakes of law, the question is, could a reasonable officer have believed that there was not clearly established law? If there's clearly established law – You've been told by a child protective officer from the State of Arizona whose job every day is to interpret those statutes and apply those statutes, this is the law. Is that not a reasonable basis upon which to form an opinion? It's a reasonable basis. It's a reasonable basis to form an opinion as to what the Arizona statute says. It doesn't tell you what the Fourth Amendment says. They are – the police officers are charged with knowing the law about the Fourth Amendment. The Fourth Amendment says – and on the plain face of the statute, which they had in front of them, they had the statute in front of them. The burden of proving voluntariness is on them, not on us. They had the statute in front of them. On its face, it says probable cause is required. Exigent circumstances is required. They knew they had neither on the face of the statute. And probable cause and exigent circumstances are common Fourth Amendment doctrines that police officers need to know. That statute is nothing more than a restatement of the normal exigent circumstances doctrine. That's all it says. And they are held to know the law. I don't – they can't rely on what a social worker says on the field when this Court has said in Calabretta, you can't do this. This violates the Fourth Amendment and has said it years before they purport to be interpreting this statute. They are charged with knowing what this Court says. And to let a police officer off for violating a decade-old decision of this Court on these very exact issues is to make a mockery of the Constitution of the United States and to say that we're going to so protect police officer liability that they can rely on the legal interpretation of a social services worker and ignore the Fourth Amendment decisions of the Ninth Circuit Court of Appeals. I don't think that's a valid basis for allowing police officers to conduct business. They're charged with knowing the real law, not as some social worker imagines it to be. I will – unless there are other questions. No further questions, counsel. Thank you. Mr. Mutig, you have reserve time. Thank you, Your Honors. Counsel addressed a number of issues very quickly. I'm going to go back and do as best I can. As far as a probable cause, I think it's a misstatement to say that we've conceded that there was no probable cause. In our reply brief at page 12, we talk about exactly why there were probable cause as far as getting a warrant, and that had to do a lot with what was happening at the time that the officers and the CPS workers arrived on the scene. Of course, they had an anonymous tip in the first instance, but by the time when they got there, they were able to observe the condition of the house, which was under construction. They had the issue of the parents not wanting to let them into the house. And these were factors that built upon themselves. And so to say that there was no probable cause is a misstatement, and it's clearly a misstatement that we haven't addressed it because we have in our reply brief. What about the house being under construction and told them that children were being abused? Not necessarily that they were being abused, but that there may be unsafe conditions. I think that wasn't the tip, that there were – there was unsafe wiring and open sockets, and that there was potential danger to the children because of the physical condition of the home inside. Yes. Wasn't that the tip? That was part of the tip, and that had to do with the fact that the home was under construction, which is something that you could observe then when you were standing outside the home. And also, just to go a bit further on that, the documentation that talks about child safety assessment protocols, which is an exhibit to Excerpt of Record 83-2 Exhibits 15 and 16, which were Loudermilk's exhibits, that that's one of the things that they have to look at. And as Your Honor stated very specifically, if there's wiring or conditions inside the house, it could be unsafe. That's a factor that they look at. So I believe we have dealt with that. As to the Calabretta decision, counsel is very familiar with that, but the fact is there we were dealing with a forcible entry and a search without exigent circumstances over the objection of the plaintiff. And here we're talking about consent and whether the deputies formed a reasonably objective belief that there was voluntary consent. And also, one of the thrusts of the Calabretta decision is I believe the CPS or child safety workers in that case were claiming they were subject to a different standard. We're not saying that here at all. Finally, as far as the authority to take the children and what the CPS workers were allowed to do and then related to that what the officers believed that they had the authority to do, that is set forth again at length in Exhibits 15 and 16 to ER 83-2. And it's not a permissive kind of a standard as I read that. It reads mandatory that if you make an assessment that the child faces danger, you have to take some action. And that's what they were trying to do. And that's what we've tried to emphasize in our reply is that it wasn't like it was a coercive threat designed to get a means to an end. It was to protect the children, which is what their mandate is. And as far as the officers, whether they should have been apprised of the Fourth Amendment law, I think Attorney Schmidt, who was on the phone with Deputy Ray, we have ample evidence that he confirmed that the deputies weren't going to do anything outside of the Fourth Amendment. They were going to either get a warrant or get consent, but they were going to do the search lawfully. And finally, as regards this large police presence, well, again, that's sort of a non-issue because we've got Mr. Loudermilk testifying that by the end of this encounter, he actually was, to quote him, at peace with the officer being there. He trusted their objectivity even more than the CPS workers. And in fact, he wanted them to go into the house and search without the CPS workers. Of course, that wasn't going to happen, but it hardly speaks to this notion that they were, they felt threatened or fearful because the police was there. And that's all I have, Your Honors, unless you have other questions. No further questions. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Graber, Bea, Cjj